1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

RIKKI A. EVANS,

8                                        Plaintiff,

Case No. 15-cv-5383-MJP

9              v.

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

10

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

11

12                                        Defendant.

13         Rikki A. Evans seeks review of the denial of her application for Supplemental Security

14    Income.  Ms. Evans contends the ALJ misevaluated her credibility as well as the opinions of

15    Robert Sands M.D., Sara Petry M.D., and Morgan Vanderpool, M.S.W.  Ms. Evans also

16    contends the ALJ erred in finding Post-Traumatic Stress Disorder (PTSD) was not a severe

17    impairment at step two.  Dkt. 10.  Ms. Evans argues that these errors resulted in an incorrect

18    residual functional capacity (RFC) determination and ultimate finding of non-disability.  As

19    such, Ms. Evans argues the matter should be reversed and remanded for payment of benefits.

20    Dkt. 10 at 17.  Alternatively, Ms. Evans requests a new hearing.  *Id.*  As discussed below, the

21    Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further

22    administrative proceedings under sentence four of 42 U.S.C. § 405(g).

23

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

**BACKGROUND**

Ms. Evans's application was denied initially and on reconsideration.  AR 71 and 80.

After the ALJ conducted a hearing on August 8, 2013, the ALJ issued a decision finding plaintiff

not disabled.  AR 12-25.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process pursuant to 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

> **Step one:**  Plaintiff has not engaged in substantial gainful activity since March 16, 2012, the application date.
>
> **Step two:**  Plaintiff has the following severe impairments: bipolar disorder.
>
> **Step three:**  This impairment does not meet or equal the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P. Appendix 1.
>
> **Residual Functional Capacity:**  Plaintiff can perform a full range of work at all exertional levels that is simple, routine work that does not require more than occasional interaction with the general public.
>
> **Step four:**  Plaintiff cannot perform past relevant work.
>
> **Step five:**  As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

AR 14, 15, 17, 23, 24.  The Appeals Council denied plaintiff's request for review making the

ALJ's decision the Commissioner's final decision.  AR 1-6.

**DISCUSSION**

A.      **Ms. Evans's Credibility**

Ms. Evans argues that the ALJ erred in discounting her credibility because her testimony

is consistent with the medical evidence and her ability to perform certain daily activities.  Ms.

Evans also argues that the ALJ mischaracterizes the evidence by "selectively reviewing the

record and isolating statements made by various providers to suggest that she is actually more

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

functional than she states." Dkt. 10 at 9.  The Court disagrees.  In the absence of evidence of

malingering, an ALJ must give "'specific, clear and convincing reasons' in order to reject a

claimant's testimony about the severity of symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1113

(9th Cir. 2012) (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  Here, the

ALJ properly discounted Ms. Evan's testimony on the grounds that it was inconsistent with 1)

the medical evidence, 2) her daily activities, and 3) the record demonstrating she "is able to

persist and perform a job well when properly treated."  AR 18-20.

### 1. *Inconsistent with medical evidence*

Ms. Evans alleged she had "debilitating" depression causing her to be bedridden, severe

mania, and problems with memory, concentration, following instructions and getting along with

others.  AR 193, 198.  The ALJ discounted Ms. Evans's claims as inconsistent with medical

evidence which demonstrates that Ms. Evans does better when receiving proper treatment,

including medication, and is capable of the demands set forth in the RFC.  AR 19.  Specifically,

the ALJ noted that Ms. Evans's positive demeanor and presentation to various providers, as well

as mental status evaluations showing intact memory and concentration, were inconsistent with

her claims of debilitating impairment.  AR 19; *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

Cir. 2002) (An ALJ may discount a claimant's credibility on the grounds that her "allegations

[are] undermined by her demeanor or presentation as described by [her providers], and

inconsistent with other medical evidence in the record.").  The ALJ also found that the medical

evidence indicates that Ms. Evans "was expected to, and did, operate better when receiving

proper treatment" and that her "condition was assessed … after considering the effects of

treatment including medication."  AR 19; *see Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996)

(evidence suggesting the claimant responds well to treatment is relevant to the credibility

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

determination).  Substantial evidence supports these findings.

The record demonstrates that several providers noted Ms. Evans's positive demeanor and presentation.  Robert Sands, M.D. described Ms. Evans as even-tempered, good-humored and conversational.  AR 260.  Loren McCollom, Ph.D. observed that she presented as "bubbly", pleasant and cooperative, with a euthymic mood and affect, and that she maintained good eye contact.  AR 265, 270.  Alex Crampton, Psy.D., described her as cooperative and with good eye contact.  AR 376.  And Kara Walker, M.S.W. and Morgan Vanderpool, M.S.W. generally described her as easily engaged with normal behavior and affect.  AR 279-289, 478-493.  The ALJ reasonably concluded that Ms. Evans's demeanor and presentation to providers was inconsistent with her claims of debilitating depression and difficulty with social functioning.  The record also contains mental status evaluations from June of 2012 and May of 2013 indicating Ms. Evans possessed intact memory and concentration, specifically, that she could recall three of three words immediately and after five minutes, perform serial subtractions with minimal to no errors, and complete a three-step task correctly.  AR 271, 378-379.  The ALJ reasonably determined that these mental status evaluations were inconsistent with Ms. Evans's claim of debilitating cognitive difficulties.

The record also indicates that Ms. Evans was hospitalized in April of 2013 for suicidal ideation when she was off her psychotropic medication.  AR 383.  When restarted on the medication she reported feeling better fairly rapidly, had no suicidal ideation, good fund of knowledge and showed fair insight and judgment.  AR 383, 384.  Dr. Sands's March 2012 psychiatric evaluation also noted that Ms. Evans was taking medication and that she was not depressed or manic, but that she "appeared highly insightful regarding her bipolar condition" and believed strongly her medication was "a mainstay to promote her mental stability."  AR 260.  Dr.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

1    Sands also noted that if Ms. Evans maintained psychiatric stability she would be a good

2    candidate for the Division of Vocational Rehab (DVR).  *Id.*  Substantial evidence supports the

3    ALJ's determination that Ms. Evans "was expected to, and did, operate better when receiving

4    treatment" and that her condition, when properly treated, is inconsistent with her claims of

5    debilitating impairment.  AR 19.

6          Ms. Evans does not argue that the medical records do not reflect the above findings.

7    Rather, she argues that the providers also made other findings that are consistent with Ms.

8    Evans's claims of disability, and that the ALJ isolated positive statements from the providers to

9    support his conclusion that she is more functional than she is.  For instance, Ms. Evans points out

10   that Dr. Sands also found that her "socialization [was] guarded and superficial," and that she

11   reported that during mixed or manic phases she can feel paranoid and during depressive episodes

12   withdrawn and dysfunctional but that she was "at her best for a psychiatric interview."  AR 259-

13   260.  She points out that a therapist at HopeSparks treatment center listed as "additional risk

14   factors" that she experienced feelings of hopelessness, had a family history of suicide and

15   violence, had access to means and the absence of a support system, social problems, educational

16   problems, severe symptoms related to abuse as a child and anxiety, and that the therapist

17   assigned a GAF of 45.  AR 280-281.  She points out that Dr. McCollom noted in her June 2012

18   evaluation that Ms. Evans reported symptoms of PTSD and anxiety, that her Bipolar disorder

19   was not currently well managed and that her adaptive capabilities were compromised by her

20   PTSD and bipolar symptoms.  AR 272-273.  Ms. Evans also emphasizes that she was admitted to

21   a crisis bed from June 26-28, 2012 and that in April of 2013 she was hospitalized at Fairfax

22   Psychiatric Hospital due to suicidal conduct.  AR 287, 478.  Ms. Evans claims the ALJ

23   improperly ignored this other evidence in making his credibility determination and that it

1   supports her claims of disability.

2       Ms. Evans's arguments fail to establish error.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054

3   (9th Cir. 2012) (burden is on the party claiming error to demonstrate the error).  First, the ALJ

4   was entitled to discount Ms. Evans's testimony on the grounds that her claims of disability were

5   undermined by her demeanor or presentation as described by her providers, and inconsistent with

6   other medical evidence in the record.  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2002).

7   Second, the ALJ did not rely on isolated statements but based his conclusion on several different

8   medical reports from various providers which he reasonably found undermined Ms. Evans's

9   allegations of debilitating impairment.  *See id.* ("Even where [everyday] activities suggest some

10  difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

11  extent that they contradict claims of a totally debilitating impairment.").  Third, at best Ms.

12  Evans's argument amounts to an alternative interpretation of the evidence but fails to

13  demonstrate that the ALJ's interpretation was unreasonable or unsupported by substantial

14  evidence.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (where an ALJ's

15  interpretation of the evidence is reasonable and supported by substantial evidence the Court must

16  uphold the ALJ's determination even if there are reasonable alternative interpretations).

17  Accordingly, the Court must defer to the ALJ's reasonable interpretation.  *See Thomas v.

18  Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by

19  substantial evidence in the record, we may not engage in second-guessing").

20      ***2.  Inconsistent with daily activities***

21      The ALJ also discounted Ms. Evans's testimony because her "daily activities are not

22  limited to the extent one would expect, given the complaints of disabling symptoms and

23  limitations."  AR 20.  Substantial evidence supports this finding.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

1    Specifically, the ALJ noted that Ms. Evans took care of her cats, prepared meals daily

2    and performing household chores weekly.  *Id.* (referring to AR 269, 195).  Ms. Evans reported

3    she traveled by walking, public transportation or driving, that she could go outside alone,

4    shopped in stores weekly and that she could handle her funds.  *Id.* (referring to AR 196).  She

5    reported socializing with friends weekly and daily hobbies including music, television, reading

6    and watching sports.  *Id.* (referring to AR 197, 218).

7    Ms. Evans argues that "it is wholly illogical to assert that the claimant so lacks credibility

8    that her own statements concerning activities and limitations are not [to] be believed, while

9    submitting those very same statements as evidence of what she is and is not capable of."  Dkt. 10

10   at 9-10.  This argument is contrary to Ninth Circuit case law which provides that in weighing a

11   claimant's credibility the ALJ is entitled to consider her daily activities as well as any

12   inconsistencies within her testimony and between her testimony and conduct.  *See Thomas*, 278

13   F.3d 947, 958-959 (9th Cir. 2002).   Ms. Evans also argues that her ability to perform these

14   activities does not undermine her claim because the nature of bipolar disorder is such that she

15   may be able to perform these activities when she is doing well but not when symptomatic.  Dkt.

16   10 at 10.  However, "[e]ven where [everyday] activities suggest some difficulty functioning, they

17   may be grounds for discrediting the claimant's testimony to the extent that they contradict claims

18   of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

19   Moreover, it was reasonable for the ALJ to conclude that Ms. Evans is well enough to perform

20   these activities when receiving proper treatment and that this is inconsistent with her allegation

21   of total disability.  Again, at most Ms. Evan's argument offers a competing interpretation of the

22   record but fails to demonstrate that the ALJ's interpretation is unsupported by substantial

23   evidence.  *See Alan v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (where evidence admits of

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

1 more than one rational interpretation, the Court must uphold the ALJ's decision); *and see*

2 *Ludwig*, 681 F.3d 1047, 1054 (9th Cir. 2012) (burden is on the party claiming error to

3 demonstrate the error).

4    ***3.  Ability to persist and perform a job well when properly treated.***

5          Finally, the ALJ discounted Ms. Evans's testimony on the grounds that the record

6 demonstrates that she "is able to persist and perform a job well when properly treated."  AR 20.

7 Substantial evidence supports this conclusion and it is unchallenged by Ms. Evans.

8          In evaluating a claimant's credibility, the ALJ may consider evidence suggesting the

9 claimant responds well to treatment as well as inconsistencies within a claimant's testimony or

10 between her testimony and her work record.  *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir.

11 1996) (evidence suggesting the claimant responds well to treatment is relevant to the credibility

12 determination); *Thomas*, 278 F.3d 947 (9th Cir. 2002) (inconsistencies in claimant's testimony

13 and between her testimony and her work record are relevant to the credibility determination).

14 Here, Ms. Evans herself indicated that with the appropriate mental health treatment she could

15 have continued working as an event security provider and that, as long as her symptoms were

16 treated, she had a "great" employment history.  AR 20, 374.  She testified that her bipolar

17 symptoms were much improved when she was taking lithium which is supported by various

18 medical reports as well as the DVR records indicating a connection between her functional

19 limitations and lack of medication and treatment.  AR 20, 530-550.  The record also shows Ms.

20 Evans worked after the alleged onset of her disability performing event security at Staff Pro and

21 overnight work at Microsoft.  AR 20, 44-45.  At one point she reported working 25 to 40 plus

22 hours per week as event staff and at the time of the hearing she reported being hired to work as a

23 temporary cashier at Walmart and that she was scheduled to work 40 hours that week.  AR 20,

44, 535.

Ms. Evans also made inconsistent statements about her work history.  For instance, she told providers that she had trouble at her job and was talked to by her boss about her attitude but elsewhere reported that she "lov[ed] her work."  AR 46, 535.  She also testified that her job at Staff Pro ended because of her "mania" but then also acknowledged that she stopped working because it was the end of football season and there weren't many available jobs she could reach by public transportation.  AR 44-45; *see Shubert v. Astrue*, 248 Fed.Appx. 830, 832 (9th Cir. 2007) (in evaluating a claimant's credibility the ALJ may consider the fact that the "claimant's last job ended for reasons other than his medical condition").  Substantial evidence supports the ALJ's conclusion that, contrary to her claims of disabling limitations, Ms. Evans is able to persist and perform a job well when properly treated.  AR 20.

Accordingly, the ALJ did not err as he provided several clear and convincing reasons for discounting Ms. Evans's testimony.

## B.    Opinion Evidence

Ms. Evans also argues that the ALJ misevaluated the opinions of Robert Sands M.D., Sara Petry M.D., and Morgan Vanderpool, M.S.W.

### 1.    Robert Sands M.D.

Dr. Sands conducted a psychiatric evaluation of Ms. Evans in March of 2012 and opined that while Ms. Evans had a "painful, chaotic, and traumatized history" she, in fact, "is now stabilized, having achieved insight to her bipolar disorder and embraced the treatment for that disorder."  AR 206.  Dr. Sands also opined that if Ms. Evans "can maintain psychiatric stability, and control her bipolar process, she represents a good candidate for success as a DVR client."  *Id.*  Ms. Evans argues that the ALJ failed to weigh Dr. Sands's opinion that "while Ms. Evans

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

1   was stable at the time of the exam, her manic and depressive symptoms have been recurrent for

2   many years and include paranoia, racing thoughts, sleeplessness, suicidal ideation, and marked

3   withdrawal." Dkt. 11 at 11.  The Court disagrees.

4          First, the ALJ does not ignore Dr. Sands's opinion but discusses it as part of the record he

5   finds inconsistent with Ms. Evans's claims of disabling limitations and supportive of the

6   limitations assessed in the RFC.  AR 18.  Second, what Ms. Evans characterizes as Dr. Sands's

7   "opinion" regarding her manic depressive symptoms is not an opinion but a recitation of her self-

8   reported history, which the ALJ does not dispute.  Moreover, Dr. Sands's opinion is that, despite

9   her history, Ms. Evans had stabilized and was doing well.  AR 206.  An ALJ "need not discuss

10  all evidence presented to [him].  Rather [he] must explain why 'significant probative evidence

11  has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  Where a

12  physician's report does not assign specific limitations or opinions in relation to an ability to work

13  an ALJ need not provide reasons for rejecting [the] report "because the ALJ did not reject any of

14  [the reports] conclusions." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010);

15  *see also Meanel v. Apfel*, 172 F.3d 1111, 1113-1114 (9th Cir. 1999) (clear and convincing reason

16  not required to reject an opinion when there is no conflict).  Third, Ms. Evans fails to point to

17  any additional functional limitations set forth in Dr. Sands's opinion that the ALJ failed to

18  include in the RFC.  Rather, the only opinion portion of Dr. Sands's report appears to support the

19  ALJ's RFC determination.  Ms. Evans argues, in reply, that the DVR case narrative states that

20  the "report from Dr. Sands lists decision making, judgment, and concentration as significant

21  limitations."  Dkt. 12 at 6 (referring to AR 543).  However, upon review, Dr. Sands's report does

22  not, in fact, reflect those specific findings with respect to Ms. Evans's status at the time of the

23  evaluation.  AR 206.  Accordingly, the ALJ did not err.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

1

       2.        *Sara Petry M.D.*

2         Dr. Petry examined Ms. Evans when she was admitted to Fairfax Hospital for suicidal

3 ideation and again upon her release.  Ms. Evans contends that the ALJ "ignored Dr. Petry's

4 reports without comment" and failed to give specific and legitimate reasons for rejecting her

5 opinion that "Ms. Evans has a long history of Bipolar Disorder with multiple episodes of mania

6 and depression," "PTSD stemming from a history of severe abuse coupled with periods of

7 dissociation," that "her depression had been increasing over the prior two years to the extent she

8 was unable to maintain basic household chores and developed suicidal thoughts," and "she

9 continued to have an anxious mood with tangential associations and both logical as well as

10 illogical thinking."  Dkt. 10 at 14.  The Court disagrees.

11         First, the ALJ did not ignore Dr. Petry's reports without comment.  Rather, the ALJ

12 discussed the reports as part of the medical evidence that he found "supports [that] the claimant

13 was expected to, and did, operate better when receiving proper treatment" and supportive of the

14 limitations assessed in the RFC.  AR 18 and 19; *see Magallanes v. Bowen*, 881 F.3d 747, 755

15 (9th Cir. 1989) ("As a reviewing Court, we are not deprived of our faculties for drawing specific

16 and legitimate inferences from the ALJ's opinion.").  Specifically, the ALJ notes that:

17

           In April 2013, the claimant was hospitalized four days for suicidal
           ideation.  She had been off her psychotropic medications.  She was
18            restarted on her medications.  She reported that she felt better fairly
           rapidly.  At discharge, she reported feeling better and okay.  She
19            reported that she was less anxious.  She presented cooperative.
           She had an anxious mood.  Her speech was coherent.  Her thinking
20            was both logical and illogical, and she had tangential associations.
           There was no suicidal ideation.  She had good fund of knowledge.
21            She showed fair insight and judgment.  The treating doctor noted
           that she had made good progress.

22

23 AR 18-19 (referring to AR 383-385).  Second, the statements Ms. Evans characterizes as

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

"opinions" regarding her symptoms are not opinions assigning specific limitations or relating to her ability to work but, rather, observations and recitations of her self-reported history, which the ALJ does not dispute.  Ms. Evans fails to point to any additional functional limitations set forth in Dr. Petry's opinion that the ALJ failed to include in the RFC.  Rather, Dr. Petry's reports appear to support the ALJ's findings regarding the role of proper treatment and medication for Ms. Evans as well as the RFC determination.  AR 19, 383-385.  Specifically, Dr. Petry's reports reflect that Ms. Evans became depressed because she stopped taking her medication when she lost her insurance but that she "quickly" stabilized when restarted on her medication.  AR 383.  The GAF scores of 25 at intake and 60 at release comport with Dr. Petry's findings and do not contradict the ALJ's RFC which he assesses "considering the effects of treatment including medication."  AR 19, 383.  Accordingly, the ALJ was not required to provide a specific and legitimate reason for rejecting the reports as he did not reject any of the reports conclusions.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *and see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010).

### 3.    *Morgan Vanderpool, M.S.W.*

Morgan Vanderpool, M.S.W. provided counseling to Ms. Evans from April 2013 to June 2013.  AR 470-493.  In June of 2013 she provided a statement regarding Ms. Evans's capacity to maintain employment indicating that Ms. Evans's bipolar and PTSD symptoms significantly affected her ability to interact with others, maintain concentration, pace and persistence, maintain a regular work schedule and tolerate the stress of a normal work environment full-time.  AR 470-471.  Ultimately, Ms. Vanderpool opined that Ms. Evans would not be able to tolerate a full-time work schedule and would be most successful with a predictable schedule of part-time work.  AR 471.  Ms. Evans contends the ALJ failed to provide a germane reason for rejecting Ms.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

1    Vanderpool's opinion.  The Court disagrees.  The ALJ gave several reasons for discounting Ms.

2    Vanderpool's opinion including that it was inconsistent with Ms. Evans's ability to work 25 to

3    40 hours per week after the alleged onset date.  AR 22.

4           Therapists and counselors are considered "other source" witnesses and are generally

5    entitled to less deference than acceptable medical sources.  *See Molina v. Astrue*, 674 F.3d 1104,

6    111 (9th Cir. 2012); *and see* 20 C.F.R. § 404.1513 (d); 20 C.F.R. § 404.1527.  An ALJ need only

7    provide "germane reasons" for discrediting the testimony of other source witnesses.  *Id.* at 1111.

8           The ALJ properly discounted Ms. Vanderpool's opinion because it was inconsistent with

9    the record indicating that she was able to work 25 to 40 hours per week as event security after

10   the alleged onset date of her disability.  AR 22.  Ms. Evans contends that the ALJ "misread" the

11   record noting that her hearing testimony indicates she "probably worked one shift per week" of

12   10 to 12 hours at Staff Pro and that on her best month she might have worked 80 hours.  AR 45-

13   46.  However, the record indicates that Ms. Evans reported to her DVR case manager at the time

14   that she was secure in her position as Event Staff, "loving her work" and averaging 25 hours and

15   sometimes 40 hours per week.  AR 535.  Thus, the ALJ did not "misread" the record as Ms.

16   Evans contends and at best her argument points out that the record contains inconsistent

17   statements regarding her work history.  "The ALJ is responsible for determining credibility,

18   resolving conflicts in medical testimony, and resolving ambiguities."  *Andrews v. Shalala*, 53

19   F.3d 1035, 1039 (9th Cir. 1995).  When the evidence is susceptible to more than one rational

20   interpretation—the claimant's and the ALJ's—the Court must uphold the ALJ's interpretation if

21   it is supported by inferences reasonably drawn from the record.  *Tommasetti v. Astrue*, 533 F.3d

22   1035, 1038 (9th Cir. 2008).  It was reasonable for the ALJ to infer from the record that Ms.

23   Evans was working 25 to 40 hours per week after the alleged onset of her disability and to

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

1   conclude that this was inconsistent with Ms. Vanderpool's opinion regarding her functional

2   limitations.  Accordingly, the ALJ did not err in discounting Ms. Vanderpool's opinion.

3   **C.      Step Two Evaluation of PTSD**

4           Ms. Evans argues the ALJ harmfully erred in failing to include PTSD as a severe

5   impairment at step two of the evaluation.  The Court agrees.

6           At step two of the evaluation, the Commissioner must determine whether the claimant

7   has a medically severe impairment or combination of impairments that meets the 12-month

8   duration requirement.  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §

9   404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it significantly

10  limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§

11  404.1520(c), 404.1521(a).  To establish the existence of a severe impairment, the claimant must

12  provide medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §

13  404.1508.  An impairment or combination of impairments may be found "'not severe' only if the

14  evidence establishes a slight abnormality that has 'no more than a minimal effect on an

15  individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (*citing Yuckert v. Bowen*, 841, F.2d 303,

16  306 (9th Cir. 1988)).  An ALJ must consider the combined effect of all of the claimant's

17  impairments on his or her ability to function, "without regard to whether any such impairment, if

18  considered separately, would be of such severity."  42 U.S.C. 423(d)(2)(B).  "The step two

19  inquiry is a de minimus screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at

20  1290.

21          Here, the ALJ determined that PTSD was not a severe impairment because "the record

22  shows no consistent history of diagnoses," "the diagnosis was not continued later and it appears

23  bipolar disorder is better supported by the evidence as a whole" and "the impairment does not

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

1   meet the requisite duration requirement." AR 15.  The ALJ also found that even if PTSD were a

2   severe impairment, Ms. Evans's functional limitations would remain the same. *Id.*

3          First, contrary to the ALJ's determination, the record establishes that PTSD is

4   consistently diagnosed and that it meets the requisite duration requirement.  In addition to

5   diagnoses by Dr. Sands in March of 2012 and Dr. McCollom in June of 2012, which the ALJ

6   does note, PTSD is diagnosed by clinicians at HopeSparks in 2011, 2012 and 2013, as well as

7   Dr. Petry in April of 2013.  AR 260, 266, 392, 281, 290, 301, 360, 392093, 471, 478-479.

8   Moreover, Ms. Evans's PTSD symptoms are reported throughout the record and the HopeSparks

9   records indicate that PTSD is a primary focus of Ms. Evans's therapy and treatment from 2011

10  through 2013.  AR 279-372, 472-529.  The medical evidence of PTSD presented by Ms. Evans

11  was sufficient to satisfy the *de minimis* threshold at step two and the Court finds the ALJ erred in

12  failing to include PTSD as a severe impairment.

13         Second, this error was harmful.  The Commissioner argues that even if the ALJ erred at

14  step two, the error was harmless because the ALJ considered the evidence relating to PTSD in

15  determining the RFC.  Dkt. 11 at 16.  This argument fails.  An ALJ must account for *all*

16  limitations relevant to a claimant's ability to work in assessing the RFC.  *See* 20 C.F.R. §§

17  404.1545(e), 416.945(e); SSR 96-8p; *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685

18  (9th Cir. 2009) (the RFC must account for all the limitations and restrictions of the particular

19  plaintiff).  The record demonstrates that the ALJ failed to address Dr. McCollom's finding that

20  Ms. Evans's "adaptive capabilities are currently compromised by her PTSD and bipolar

21  symptoms." AR 273.  In evaluating the opinion evidence the ALJ indicates that he gave Dr.

22  McCollom's opinion "some weight" but failed to in any way address her opinion with respect to

23  this limitation. AR 21.  Nor did the ALJ include a limitation on Ms. Evans's adaptive

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

1    capabilities in the hypotheticals posed to the vocational expert at the hearing.  AR 62-69.

2    Accordingly, the error is not harmless as it potentially affects the RFC assessment and the

3    ultimate non-disability determination.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d

4    1155, 1162 (9th Cir. 2008) (an error is considered harmless where it is inconsequential to the

5    ultimate non-disability determination).

6    **D.      Scope of Review**

7            The Court may remand for benefits where 1) the record is fully developed and further

8    administrative proceedings would serve no useful purpose; 2) the ALJ fails to provide legally

9    sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3)

10   if the improperly discredited evidence were credited as true, the ALJ would be required to find

11   the claimant disabled on remand.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  Here,

12   the record is not fully developed as the ALJ improperly failed to include PTSD as a severe

13   impairment and to address the associated limitation set forth by Dr. McCollom.  On remand, the

14   ALJ may further develop the record.

15                                          **CONCLUSION**

16           For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

17   case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

18   405(g).

19           On remand, the ALJ should evaluate PTSD as a severe impairment, address the limitation

20   on adaptability contained in Dr. McCollom's opinion, and develop the record as necessary.

21           DATED this 7th day of February, 2016.

22

23                                                        _____
                                                          MARSHA J. PECHMAN
                                                          United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16